# EXHIBIT N

THE NEWARK GROUP, INC.

and

[_____],

as Warrant Agent

_____

WARRANT AGREEMENT

Dated as of _____, 2010

_____

Warrants to Purchase Common Stock, par value $.01 per share

_____

#4833-9459-5334

## TABLE OF CONTENTS

**Page**

ARTICLE I ISSUANCE OF WARRANTS; EXECUTION AND DELIVERY OF
WARRANT CERTIFICATES...................................................................................2

Section 1.01      Issuance of Warrants..........................................................2
Section 1.02      Execution and Delivery of Warrant Certificates...............2
Section 1.03      Issuance of Warrant Certificates........................................3

ARTICLE II WARRANT PRICE, DURATION AND EXERCISE OF WARRANTS ................3

Section 2.01      Exercise Price.....................................................................3
Section 2.02      Duration of Warrants..........................................................3
Section 2.03      Exercise of Warrants...........................................................4
Section 2.04      Reservation of Warrant Shares ...........................................9
Section 2.05      Vesting .............................................................................10

ARTICLE III OTHER PROVISIONS RELATING TO RIGHTS OF HOLDERS OF
WARRANT .......................................................................................................12

Section 3.01      No Rights as Stockholder Conferred by Warrants or
Warrant Certificates..........................................................12
Section 3.02      Lost, Mutilated, Stolen or Destroyed Warrant Certificates. ..........12
Section 3.03      General Information to be Provided by the Company. ..................13
Section 3.04      Notice of Certain Events....................................................13
Section 3.05      Conditional Exercise – Registration Rights; Tag-Along. ............13

ARTICLE IV EXCHANGE AND TRANSFER ...................................................................15

Section 4.01      Exchange and Transfer.....................................................15
Section 4.02      Restrictions on Transfer; Restrictive Legend ...................16
Section 4.03      Treatment of Holders of Warrant Certificates. ................18
Section 4.04      Cancellation of Warrant Certificates. ...............................18

ARTICLE V ADJUSTMENT OF WARRANT PRICE AND NUMBER OF WARRANT
SECURITIES....................................................................................................18

Section 5.01      Adjustments Generally......................................................18
Section 5.02      Stock Dividends; Stock Splits...........................................18
Section 5.03      Aggregation of Shares.......................................................18
Section 5.04      Adjustments in Exercise Price...........................................19
Section 5.05      Reclassification or Reorganization....................................19
Section 5.06      Cash Dividends; Extraordinary Transactions. ...................19
Section 5.07      Notices of Changes in Warrant...........................................19

#4833-9459-5334

Section 5.08        No Fractional Shares.................................................................20

Section 5.09        Form of Warrant. ....................................................................20

Section 5.10        De Minimis Adjustments. .........................................................20

ARTICLE VI CONCERNING THE WARRANT AGENT........................................................20

Section 6.01        Warrant Agent..........................................................................20

Section 6.02        Conditions of Warrant Agent's Obligations. ................................20

Section 6.03        Resignation and Appointment of Successor. ...............................22

ARTICLE VII MISCELLANEOUS........................................................................................23

Section 7.01        Amendment..............................................................................23

Section 7.02        Notices and Demands to the Company and Warrant Agent. .........24

Section 7.03        Notices -- Address for Notice. ....................................................24

Section 7.04        Applicable Law; Waiver of Jury Trial..........................................24

Section 7.05        Headings. ................................................................................24

Section 7.06        Counterparts.............................................................................24

Section 7.07        Inspection of Agreement.............................................................24

Section 7.08        Notices – Manner of Notice.........................................................24

#4833-9459-5334

WARRANT AGREEMENT

THIS WARRANT AGREEMENT (the "Agreement"), dated as of _____, 2010 (the "Effective Date") between THE NEWARK GROUP, INC., a Delaware corporation (the "Company"), and [_____], a [            ] duly [incorporated] and existing under the laws of [        ], as Warrant Agent (the "Warrant Agent[1]").

W I T N E S S E T H :

WHEREAS, The Newark Group, Inc., a New Jersey corporation and the predecessor to the Company ("Old TNG") and its domestic subsidiaries filed voluntary petitions for reorganization in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), in In re The Newark Group, Inc. et al., Case No.: 10-[____] (the "Bankruptcy Cases"), under chapter 11 of title 11 of the United States Code §§ 101-1330, and in connection therewith filed the Joint Prepackaged Plan of Reorganization of The Newark Group, Inc., et al., dated as of [_____], 2010 (the "Plan"); and

WHEREAS, the Bankruptcy Court confirmed the Plan and the Effective Date under the Plan occurred on the date first written above (the "Effective Date"); and

WHEREAS, on the Effective Date, Old TNG merged with and into a newly-formed Delaware corporation ("Merger Sub"), a wholly-owned subsidiary of Old TNG, with Merger Sub as the surviving corporation, and upon completion of such merger, Merger Sub changed its name to The Newark Group, Inc.; and

WHEREAS, the Plan provides that the Company shall issue to [the holders of interests in Old TNG common stock] [2] / [certain members of the Company's management] (collectively, the "Initial Holders") Series A Warrants of the Company (collectively, the "Warrants") entitling the registered holders thereof to purchase shares of the Company's common stock, par value $0.01 per share (the "Common Stock"); and

WHEREAS, the Company desires the Warrant Agent to act on behalf of the Company in connection with the issuance, transfer, exchange, exercise and replacement of the certificates representing the Warrants (the "Warrant Certificates"), and in this Agreement wishes to set forth, among other things, the form and provisions of the Warrant Certificates and the terms and conditions on which they may be issued, transferred, exchanged, exercised and replaced;

NOW, THEREFORE, in consideration of the premises and of the mutual agreements herein contained, the parties hereto agree as follows:

---

[1]  The Warrant Agent may be the Company.

[2] The Company will have two separate Warrant Agreements:  (i) one for the warrants issued to holders of interests in Old TNG common stock ("Old Equity Warrants") and (ii) one for the warrants issued to certain members of the Company's management ("Management Warrants").  The two agreements will be substantially identical except that Management Warrants will be subject to the time-based vesting conditions set forth in Section 2.05.

#4833-9459-5334

## ARTICLE I
## ISSUANCE OF WARRANTS; EXECUTION AND DELIVERY OF WARRANT CERTIFICATES

Section 1.01        Issuance of Warrants.  The Warrants shall be evidenced by Warrant Certificates.  Each outstanding Warrant shall represent the right, subject to the provisions contained herein and therein, to purchase one share of Common Stock (each, a "Warrant Share").  The Company shall issue and deliver (or cause to be issued and delivered), as of the date hereof, to each Initial Holder, a duly executed Warrant Certificate registered in the name of such Initial Holder for the number of Warrant Shares such Initial Holder is entitled to receive as a distribution under the Plan.  The Warrants shall entitle the Holders (as defined below) to collectively purchase up to [___][3] Warrant Shares, in the aggregate, as such amount may be adjusted from time to time pursuant to this Agreement.

Section 1.02        Execution and Delivery of Warrant Certificates.

(a)        Each Warrant Certificate shall be issued in substantially the form set forth in Exhibit A hereto, shall be dated and may have such letters, numbers or other marks of identification or designation and such legends or endorsements printed, lithographed or engraved thereon as the officers of the Company executing the same may approve (execution thereof to be conclusive evidence of such approval) and as are not inconsistent with the provisions of this Agreement, or as may be required to comply with any applicable law, including applicable rules and regulations made pursuant to any such law.  The Warrant Certificates shall be signed on behalf of the Company by the chairman of the Board of Directors of the Company (the "Board of Directors"), the chief financial officer, the president, any vice president, any assistant vice president, the treasurer or any assistant treasurer of the Company, and each Warrant Certificate may but need not be attested by the Company's secretary or one of its assistant secretaries.  Such signatures may be manual or facsimile signatures of such authorized officers and may be imprinted or otherwise reproduced on the Warrant Certificates.

(b)        No Warrant Certificate shall be valid for any purpose, and no Warrant evidenced thereby shall be exercisable, until such Warrant Certificate has been countersigned by the Warrant Agent by manual signature.  Such signature by the Warrant Agent upon any Warrant Certificate executed by the Company shall be conclusive evidence, and the only evidence, that the Warrant Certificate so countersigned has been duly issued hereunder.

(c)        In case any officer of the Company who shall have signed any of the Warrant Certificates (either manually or by facsimile signature) shall cease to hold such officer position before the Warrant Certificates so signed shall have been countersigned and delivered by the Warrant Agent as provided herein, such Warrant Certificates may be countersigned and delivered by the Warrant Agent notwithstanding that the person who signed such Warrant

---

[3] The Company currently contemplates that 28,730,100 shares of Common Stock will be distributed under the Plan as of the Effective Date, in which case the Old Equity Warrants would be exercisable for an aggregate of 5,070,018 shares of Common Stock and the Management Warrants would be exercisable for an aggregate of 1,778,954 shares of Common Stock, all at the Exercise Price set forth in Section 2.01.

-2-

#4833-9459-5334

Certificates has ceased to hold such officer position with the Company, and any Warrant Certificate may be signed on behalf of the Company by such persons as, at the actual date of the execution of such Warrant Certificate, hold such officer positions with the Company, although at the date of the execution of this Agreement any such person did not hold such officer position.

(d)    The term "Holder," when used with respect to any Warrant Certificate or any Warrant evidenced thereby, shall mean any person in whose name such Warrant Certificate is, at the time of such determination, registered upon the books to be maintained by the Warrant Agent for that purpose.  As used in this Agreement, "person" means an individual, partnership, corporation, unincorporated organization, joint stock company, limited liability company, trust, joint venture or other legal entity, or a governmental agency or political subdivision thereof.

Section 1.03    Issuance of Warrant Certificates.

(a)    Warrant Certificates evidencing Warrants shall (except to the extent provided otherwise in Sections 2.03, 3.02 and 4.01) be executed by the Company in the manner set forth in Section 1.02 and delivered to the Warrant Agent.  Warrant Certificates evidencing the Warrants to be issued to the Initial Holders under the Plan shall be so executed by the Company and delivered to the Warrant Agent upon or promptly following the execution of this Agreement. The Warrant Agent shall, upon receipt of Warrant Certificates duly executed on behalf of the Company, countersign each such Warrant Certificate and shall deliver such Warrant Certificates to or upon the order of the Company.  Subsequent to the original issuance of Warrant Certificates to the Initial Holders, the Warrant Agent shall countersign a Warrant Certificate only if the Warrant Certificate is issued in exchange or substitution for one or more previously countersigned Warrant Certificates or in connection with their transfer as hereinafter provided.

## ARTICLE II
## WARRANT PRICE, DURATION AND EXERCISE OF WARRANTS

Section 2.01    Exercise Price.  The initial exercise price for each Warrant shall be $[5.48][4] per Warrant Share (the "Exercise Price"), subject to adjustment as provided herein.

Section 2.02    Duration of Warrants.  Subject to the provisions of this Agreement, Warrants may be exercised at any time prior to the Expiration Date, as specified herein, on any day other than a Saturday, Sunday or a day on which banking institutions in the State of New York are authorized or obligated by law or executive order to close (a "Business Day") prior to 5:00 p.m. New York City time, at the offices of the Warrant Agent at _____ (the "Warrant Agent Office") on _____, 2015[5] (such date

---

[4] Exercise Price based on there being, as currently contemplated, 28,730,100 shares of Common Stock distributed under the Plan as of the Effective Date, and an equity value of $157.5 million for the Company.

[5] The Expiration Date will be 5 years from the issuance date.

-3-

#4833-9459-5334

and such time, the "Expiration Date").  Each Warrant not exercised at or before the Expiration Date shall thereupon become void, and at such time all rights, under this Agreement and the applicable Warrant Certificate, of the Holder of any such Warrant shall automatically cease, with respect to any such Warrant.

Section 2.03    Exercise of Warrants.

(a)    Warrants may be exercised, at the option of the Holder, in whole or in part, at any time or from time to time, by presentation of the Warrant Certificate evidencing such Warrants, duly executed by the Holder, to the Warrant Agent and simultaneous payment of the Exercise Price to the Company; provided that no Holder shall (subject to waiver by the Board of Directors, in its sole discretion, on a case-by-case basis) be entitled to exercise less than all of the Warrants represented by any Warrant Certificate if such partial exercise would result in the issuance of a number of Warrant Shares that is less than 1% of the total number of shares of Common Stock outstanding immediately prior to such exercise.  Payment of the Exercise Price shall be made, at the option of the Holder, (i) in United States dollars by certified or official bank check payable to the Company, or by wire transfer to an account specified in writing by the Company or the Warrant Agent to such Holder, in either case in immediately available funds in an amount equal to the aggregate Exercise Price for such Warrant Shares or (ii) at any time after the Valuation Date (as defined below), any Holder may exercise all (but not less than all) of its Warrants by Cashless Exercise (as defined and in the manner set forth in Section 2.03(d)).  In addition, upon consummation of a Triggering Event (as defined below), the Warrants shall be exercised by Cashless Exercise in the manner set forth below.  With respect to any Triggering Event:  (i) the Company shall give or cause to be given written notice of such Triggering Event to each Holder, at the last address set forth for such Holder in the register books of the Warrant Agent, not less than ten (10) days prior to consummation of such Triggering Event, provided that the Company's failure to give such notice, or any defect therein, shall not affect the legal effect or validity of such Triggering Event;  (ii)(x) if the Triggering Event Price Per Share exceeds the Exercise Price, then upon consummation of such Triggering Event all Warrants then outstanding shall automatically be exercised by way of Cashless Exercise (as defined and in the manner set forth in Section 2.03(d)) and (y) if the Triggering Event Price Per Share is less than or equal to the Exercise Price, then upon consummation of such Triggering Event all Warrants then outstanding shall automatically be terminated and cancelled without payment and the Company shall have no further obligation in respect of the Warrants, provided that, for the avoidance of doubt, this clause (ii) shall not restrict the right of any Holder to exercise all of its Warrants via payment of the Exercise Price in cash pursuant to clause (i) of the immediately preceding sentence, at any time prior to consummation of any Triggering Event; and (iii) in the event of any Cashless Exercise of Warrants pursuant to a Triggering Event that is not a Qualified Public Offering (as defined below), each Holder shall receive, in lieu of each Warrant Share that such Holder would otherwise receive pursuant to such Cashless Exercise, the per-share consideration for which outstanding shares of Common Stock are exchanged (or into which such shares are converted) in connection with such Triggering Event.

(b)    As used herein, a "Triggering Event" shall mean any of the following: (i) a firm commitment underwritten public offering of shares of Common Stock of the Company to the public that results in gross proceeds to the Company of at least $150 million, is led by a nationally recognized investment bank, and results in shares of Common Stock being

-4-

#4833-9459-5334

listed on a national securities exchange (a "Qualified Public Offering"), (ii) a merger, consolidation, or other similar transaction or series of transactions to which the Company is a party and pursuant to which (a) the Company is not the surviving person in such transaction or (b) if the Company is the surviving person, the holders of shares of Common Stock outstanding immediately prior to consummation of such transaction represent less than 75% of the shares of Common Stock outstanding immediately following consummation of such transaction, and (iii) the sale or other disposition of all or substantially all of the assets of the Company and its subsidiaries, taken as a whole; provided, that, in the case of (ii) or (iii), shares of Common Stock are converted into or exchanged for cash, other securities or assets of the Company or another person in connection with such Triggering Event.  As used herein, "Triggering Event Price Per Share" means (i) with respect to any Triggering Event that is a Qualified Public Offering, the per-share price (net of any applicable underwriter discounts or commissions) at which shares of Common Stock are sold to the public in such offer and (ii) with respect to any Triggering Event that is not a Qualified Public Offering, the per share fair market value of the consideration being paid by the third party in connection with such Triggering Event, as determined by adding (a) the per share cash consideration, (b) for consideration in the form of publicly traded securities where the per share valuation of such securities is set forth in the definitive agreement entered into in connection with such transaction, such per share valuation, (c) for consideration in the form of publicly traded securities where the per share valuation of such securities is not set forth in the definitive agreement entered into in connection with such transaction, the average closing price for the ten (10) consecutive trading days ending on the second (2nd) Business Day prior to the consummation of the transaction, and (d) the per share fair market value of consideration in the form of any other securities or assets as determined in good faith by an the Board of Directors based on information reasonably available to it; provided, that with respect to any Triggering Event that is a merger in which shares of Common Stock are converted into or exchanged for voting equity securities of another entity, the Triggering Event Price Per Share shall be determined by an independent valuation firm selected by the Board of Directors, taking into account the expected synergies (net of the expected cost of achieving such synergies) to be realized by the combined entity following the consummation of such Triggering Event.

(c)    As promptly as practicable after the Valuation Date, the Board of Directors shall direct an independent valuation firm (the "Valuation Firm") selected by the Board of Directors to determine the Company Equity Value (as defined below) as of such Valuation Date, together with the per share value of the Common Stock calculated based upon the Company Equity Value of the Company as of the Valuation Date (the "Per Share Equity Value"). The Company shall require the Valuation Firm to provide to the Company, within  thirty (30) days following the Valuation Date, a written report (the "Valuation Report") that sets forth its determination of Company Equity Value and the Per Share Equity Value. The Company shall notify the Holders of such determination of the Company Equity Value as of the Valuation Date, together with the Per Share Equity Value as of the Valuation Date, together with a synopsis of the Valuation Report, not later than the 30th day prior to the Expiration Date, which shall be final and binding on the Company and the Holders.  The Company shall bear all expenses of the Valuation Firm.  For purposes of this Agreement, "Valuation Date" means the 90th day prior to the Expiration Date.  For purposes of this Agreement, "Company Equity Value" means the total equity value of the company, as determined by using substantially the same methodologies and assumptions as Jeffries & Company, Inc. used to determine that $157.5 million was the mid-point of the range of the total equity value of the Company for purposes of the Plan, and taking

-5-

#4833-9459-5334

into account the Company's net debt as of the date when such value is being measured; provided, that if the Valuation Firm determines the Company Equity Value within a given range, the Company Equity Value for all purposes of this Agreement shall be deemed to be the mid-point of such range.

(d)    In lieu of paying the aggregate Exercise Price by certified or official bank check or by wire transfer, any Holder may, at any time after the Valuation Date, elect to exercise Warrants by authorizing the Company to withhold from issuance a number of Warrant Shares issuable pursuant to the Warrant Certificate evidencing the Warrants being exercised which, when multiplied by the Per Share Equity Value , is equal to the aggregate Exercise Price of all Warrants being exercised, and such withheld Warrant Shares shall thereupon no longer be issuable under the Warrant (a "Cashless Exercise").  The formula for determining the number of Warrant Shares to be issued in a Cashless Exercise is as follows:

$$X = \frac{(A-B) \times C}{A}$$

where:

X = the number of Warrant Shares issuable upon exercise of the Warrant pursuant to this subsection (d).

A = the Per Share Equity Value .

B = the Exercise Price.

C = the number of Warrant Shares as to which a Warrant is then being exercised including the withheld Warrant Shares.

If, with respect to any purported or attempted Cashless Exercise of Warrants, the foregoing calculation results in a negative number, then no Warrant Shares shall be issuable via such purported or attempted Cashless Exercise.  With respect to any Cashless Exercise in connection with a Triggering Event, the formula set forth above shall be used to determine the number of Warrant Shares issuable pursuant to such Cashless Exercise, except that "A" shall mean the Triggering Event Price Per Share instead of the Per Share Equity Value.

(e)    The date on which payment in full of the Exercise Price is received by the Warrant Agent (or deemed to be received in the case of a Cashless Exercise) shall, subject to receipt of the Warrant Certificate as aforesaid, be deemed to be the date on which the Warrant is exercised. The Warrant Agent shall promptly deposit all funds received by it in payment for the exercise of Warrants in an account of the Company maintained with it (or in such other account as may be designated by the Company) and shall advise the Company, by telephone or by facsimile transmission or other form of electronic communication available to both parties, at the end of each day on which a payment for the exercise of Warrants is received of the amount so deposited to its account. The Warrant Agent shall promptly confirm such advice to the Company in writing.

#4833-9459-5334

(f)     Upon surrender of the underlying Warrant Certificate and payment of the Exercise Price (or the deemed payment of the Exercise Price in connection with a Cashless Exercise) in connection with the exercise (other than a Cashless Exercise pursuant to any Triggering Event that is not a Qualified Public Offering) of Warrants by any Holder, the Warrant Agent shall requisition from the transfer agent for the Common Stock (the "Transfer Agent[6]") for issuance and delivery to or upon the written order of the Holder of such Warrant Certificate and in such name or names as the Holder may designate, a certificate or certificates for the Warrant Shares issuable upon the exercise of the Warrants evidenced by such Warrant Certificate, less any Warrant Shares withheld in connection with a Cashless Exercise, if applicable.  Upon receipt thereof, the Company shall, as promptly as practicable, and in any event within three (3) Business Days thereafter, cause to be issued to the Holder the aggregate number of whole Warrant Shares (rounded down to the nearest whole share) issuable upon such exercise and deliver to the Holder written confirmation that such Warrant Shares have been duly issued and recorded on the books of the Company as hereinafter provided.  The Warrant Shares so issued shall be registered in the name of the Holder or such other name as shall be designated in the order delivered by the Holder.  The certificate or certificates for such Warrant Shares shall be deemed to have been issued and any person so designated to be named therein shall be deemed to have become the holder of record of such Warrant Shares as of the date of surrender of such Warrant Certificate at the Warrant Agent Office duly executed by the Holder thereof and upon payment of the Exercise Price or the deemed payment of the Exercise Price in connection with a Cashless Exercise.  Notwithstanding any other provision contained in this Agreement, (i) the Company may, in its sole discretion, refuse to register Warrant Shares (x) in the name of any person who acquired any Warrant or any Warrant Shares otherwise than in accordance with this Agreement or (y) in the name of any Competitor (as defined below), and (ii) no Warrant Share shall be registered in the name of any person other than the Holder of the underlying Warrant, if such registration would result in any class of equity securities of the Company being held of record by more than three hundred (300) persons or otherwise result in circumstances that the Board of Directors, in its sole discretion, determines could require the Company to file reports under the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder (the "Exchange Act"), if the Company is not then otherwise subject to such requirements.  As used in this Agreement, (a) "Competitor" means any entity (other than the Company or a controlled Affiliate thereof) engaged in the business of producing recycled paper and paperboard products in North America and/or Europe, or any controlled Affiliate of such an entity and (b) "Affiliate" means, with respect to any specified person, any other person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified person (for purposes of such definition, "control" when used with respect to any specified person means the power to direct the management and policies of such person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have meanings correlative to the foregoing).

(g)     Upon surrender of any Warrant Certificate evidencing Warrants exercised via Cashless Exercise in connection with a Triggering Event other than a Qualified Public Offering, the Warrant Agent shall promptly notify the Company of such surrender and

---

[6]  The Transfer Agent may be the Company.

-7-

provide such information and reasonable assistance as the Company may request in connection with the distribution to such Holder of the consideration to be received by such Holder, pursuant to Section 2.03(a), in lieu of the Warrant Shares that such Holder would otherwise have received pursuant to such exercise.

(h)    In the event that any Holder makes a partial exercise of the Warrants evidenced by any Warrant Certificate, the Warrant Agent shall issue and deliver to such Holder or its registered assigns a new Warrant Certificate evidencing a number of Warrants equal to the number of Warrants represented by the Warrant Certificate immediately prior to such partial exercise minus the number of Warrants exercised in such partial exercise.

(i)    Any exercise of a Warrant pursuant to the terms of this Agreement shall be irrevocable and shall constitute a binding agreement between the Holder and the Company, enforceable in accordance with its terms, except to the extent that Section 3.05 provides otherwise with respect to any Holder's conditional exercise of Warrants following receipt of a Piggyback Registration Notice.

(j)    The Warrant Agent shall:

(i)    examine the Warrant Certificates evidencing all exercised Warrants and all other documents delivered to it by or on behalf of Holders as contemplated hereunder to ascertain whether or not, on their face, such exercised Warrant Certificates and any such other documents have been executed and completed in accordance with their terms and the terms hereof;

(ii)    where the Warrant Certificates evidencing an exercised Warrant or other document appears on its face to have been improperly completed or executed or some other irregularity in connection with the exercise of the Warrants exists, the Warrant Agent shall endeavor to inform the appropriate parties (including the person submitting such instrument) of the need for fulfillment of all requirements, specifying those requirements which appear to be unfulfilled;

(iii)    inform the Company of and cooperate with and assist the Company in resolving any reconciliation problems between exercised Warrants received and delivery of Warrants to the Warrant Agent's account;

(iv)    advise the Company no later than three (3) Business Days after receipt of any Warrant Certificate evidencing an exercised Warrant, of (i) the receipt of such Warrant Certificate and the number of Warrants evidenced thereby that have been exercised in accordance with the terms and conditions of this Agreement and (ii) such other information as the Company shall reasonably require; and

(k)    All questions as to the validity, form and sufficiency (including time of receipt) of any exercised Warrant or the Warrant Certificate evidencing any exercised Warrant will be determined by the Company in its sole discretion, which determination shall be final and binding.  The Company reserves the right to reject any and all exercised Warrants not in proper

form or for which any corresponding agreement by the Company to exchange would, in the opinion of the Company, be unlawful.  Such determination by the Company shall be final and binding on the Holders, absent manifest error.  Moreover, the Company reserves the absolute right to waive any of the conditions to the exercise of Warrants or defects in the exercise thereof with regard to any particular exercise of Warrants.  Neither the Company nor the Warrant Agent shall be under any duty to give notice to the Holders of the Warrants of any irregularities in any exercise of Warrants, nor shall it incur any liability for the failure to give such notice.

(l)　　With respect to the exercise of any Warrant at any time while the Stockholders Agreement (as defined below) is still in effect, the Holder of such Warrant shall, as a condition precedent to the issuance of Warrant Shares pursuant to such exercise (unless such Holder is already a party to the Stockholders Agreement), execute a joinder agreement in substantially the form attached as Exhibit A to the Stockholders Agreement (or such other documentation as is agreed by the Company and such Holder) to become a party to the Stockholders Agreement and confirm that such Holder takes the Warrant Shares subject to all the terms and conditions of the Stockholders Agreement and agrees to be bound by all of the terms and conditions thereof.  As used in this Agreement, "Stockholders Agreement" means the Stockholders Agreement, dated as of the date hereof, among the Company and the Stockholder Parties party thereto, as may be amended from time to time.

(m)　　Prior to the delivery of any Warrant Shares upon the exercise of a Warrant, the Holder shall pay, or make adequate provision acceptable to the Company for the satisfaction of, the statutory minimum prescribed amount of federal and state income tax and other withholding obligations of the Company, including, at the Holder's option with respect to any exercise after the Valuation Date or in connection with any Triggering Event, by having the Company withhold from the number of Warrant Shares otherwise deliverable in connection with such exercise, a number of  Warrant Shares which, when multiplied by the Per Share Equity Value or the Triggering Event Price Per Share, as applicable, is equal to the amount of such federal and state tax and other withholding obligations, and such withheld Warrant Shares shall no longer be issuable under the Warrant.

Section 2.04　　　　Reservation of Warrant Shares

(a)　　For the purpose of enabling it to satisfy any obligation to issue Warrant Shares upon exercise of Warrants, the Company will at all times through the Expiration Date, reserve and keep available out of its aggregate authorized but unissued or treasury shares of Common Stock, a number of shares equal to the number of Warrant Shares deliverable upon the exercise of all outstanding Warrants, and the Company's Transfer Agent is hereby irrevocably authorized and directed at all times to reserve such number of authorized and unissued or treasury shares of Common Stock as shall be required for such purpose.  The Company will keep a copy of this Agreement on file with the Transfer Agent.  The Warrant Agent is hereby irrevocably authorized to requisition from time to time from such Transfer Agent stock certificates evidencing Warrant Shares issuable upon exercise of outstanding Warrants, and the Company will supply such Transfer Agent with duly executed stock certificates for such purpose.

#4833-9459-5334

(b)    The Company covenants that all Warrant Shares issued upon exercise of the Warrants will, upon issuance in accordance with the terms of this Agreement, be fully paid and nonassessable and free from all taxes, liens, charges and security interests created by or imposed upon the Company with respect to the issuance thereof.

Section 2.05    Vesting[7]

(a)    Vesting Percentage.  Notwithstanding Section 2.03, a Warrant Certificate may only be exercised for that number of shares equal to the number of Warrant Shares evidenced by such Warrant Certificate multiplied by the Vested Percentage.  With respect to any Holder, the "Vested Percentage" (i) shall be 100%, upon and following any such termination, if such Holder terminates his or her employment with the Company for Good Reason (as defined below), or if Company terminates his or her employment with the Company without Cause (as defined below), (ii) shall be 100% immediately prior to and following any Triggering Event, and (iii) shall otherwise be:[8]

- 0%, if such a termination of employment is prior to _____, 2011;

- 33 1/3%, if such a termination of employment is on or after _____, 2011 but prior to _____, 2012;

- 66 2/3%, if such a termination of employment is on or after _____, 2012 but prior to _____, 2013;

- 100%, if such a termination of employment is on or after _____, 2013.

In the event that any Holder dies or becomes disabled prior to _____, 2013, and while in the employ of the Company, the Vested Percentage for such Holder shall include partial vesting for the annual vesting period in which such death or disability occurs, based on the number of days in such vesting period that precede the date of death or disability. Except to the extent set forth in this Section 2.05(a) and Section 2.05(b), no termination of employment shall otherwise affect any Holder's right to exercise any Warrants held by such Holder.

(b)    Forfeiture; Repurchase.  In the event that any Holder's employment with the Company terminates for any reason at a time when such Holder's Vesting Percentage is less than 100% (including any vesting that occurs as a result of such termination), then (i) the unvested portion of the Warrants then held by such Holder shall automatically be forfeited to the Company, without payment, and the Holder shall thereupon cease to have any further rights with respect to any such forfeited Warrants and (ii) the Company shall have the right, but not the obligation, at any time during the forty-five (45) day period following the date of such termination, to purchase all or any portion of the Warrants held by such Holder following such forfeiture, at a per-Warrant purchase price equal to the difference between (x) the per-share fair market value of the Common Stock, as determined by the Board on the basis of such quotations

---

[7] This Section 2.05 will only be included in the Warrant Agreement for Management Warrants.

[8] Dates specified below will be anniversaries of the Effective Date.

-10-

or other information as it in good faith considers appropriate minus (y) the Exercise Price per Warrant.  For purposes of this paragraph, the "unvested portion" of the Warrants held by any Holder shall be equal to (x) the number of Warrants held by such Holder immediately prior to the termination of his or her employment with the Company multiplied by (y) the difference (expressed as a decimal) between 1.0 and such Holder's Vested Percentage (expressed as a decimal).

(c)    Definitions.

(i)    "Cause" (meaning a termination by the Company of the Holder's employment for Cause) shall mean:

(A)    in connection with the Holder's employment by the Company, the commission by the Holder of any act involving gross negligence, intentional dishonesty of a material nature or fraud; or

(B)    any conduct, action or behavior by the Holder involving moral turpitude, or willful misconduct, that has or may reasonably be expected to have a negative effect on the reputation or interests of the Company; or

(C)    The Holder shall have been convicted of, or have entered a plea of nolo contendere or the equivalent in respect of a charge of, any criminal act (x) constituting a felony under the laws of the United States or any state or political subdivision thereof or (y) that has or may reasonably be expected to have a negative effect on the Company, monetarily or otherwise; or

(D)    any act or omission that constitutes a material breach by the Holder of any of his or her obligations under this Agreement or any written policy of the Company, including, without limitation, the willful and continued failure or refusal of the Holder to substantially perform the duties reasonably required of him as an employee of the Company

For purposes hereof, an act or omission shall not be deemed to be willful if taken or omitted in the good faith belief that such was in, or not opposed to, the best interests of the Company.

(ii)    "Good Reason" shall mean the occurrence of any of the following without the Holder's prior written consent:

(A)    a reduction in the Holder's then current base salary (other than a reduction of 5% or less that is made in connection with reductions to salaries of the Company's other senior executives), the elimination of health insurance benefits, or the failure to make any base salary payment within 30 days of the date such payment is due;

(B)    a material diminution of the Holder's job title or duties or responsibilities;

#4833-9459-5334

                       (C)     relocation of the Holder's own principal office to a location more than 50 miles from Cranford, New Jersey; or

                       (D)     the Board knowingly directs or asks the Holder to carry out any action or activity that is illegal.

Anything herein to the contrary notwithstanding, the Holder's employment shall not be deemed to be terminated for Good Reason within the meaning of clauses (i) - (iv) above unless the Holder provides written notice to the Company within thirty (30) days of the initial occurrence of the event or condition constituting Good Reason stating the basis of such termination and the Company fails to cure such event or condition within thirty (30) days of receipt of such notice.

## ARTICLE III
## OTHER PROVISIONS RELATING TO RIGHTS OF HOLDERS OF WARRANT

Section 3.01     No Rights as Stockholder Conferred by Warrants or Warrant Certificates.   No Warrant Certificate or Warrant evidenced thereby shall, and nothing contained in this Agreement shall be construed to, entitle the Holder or any beneficial owner thereof to any of the rights of a registered holder or beneficial owner of shares of Common Stock, including, without limitation, the right to receive any dividends or distributions paid with respect to shares of Common Stock, the right to vote or to consent or to receive notice as a stockholder of the Company with respect to the election of directors of the Company or any other matter with respect to which stockholders of the Company are entitled to vote or consent or receive notice, or any other rights whatsoever as stockholders of the Company.

Section 3.02     Lost, Mutilated, Stolen or Destroyed Warrant Certificates. Upon receipt by the Warrant Agent of evidence reasonably satisfactory to it and the Company of the ownership of and the loss, mutilation, theft or destruction of any Warrant Certificate and of such security or indemnity as may be required by the Company and the Warrant Agent to hold each of them and any agent of them harmless and, in the case of mutilation of a Warrant Certificate, upon surrender thereof to the Warrant Agent for cancellation, then, in the absence of notice to the Company or the Warrant Agent that such Warrant Certificate has been acquired by a bona fide purchaser, the Company shall execute, and an authorized officer of the Warrant Agent shall manually countersign and deliver, in exchange for or in lieu of the lost, mutilated, stolen or destroyed Warrant Certificate, a new Warrant Certificate of the same tenor and evidencing a like number of Warrants. Upon the issuance of any new Warrant Certificate under this Section 3.02, the Company may require the payment of a sum sufficient to cover any stamp or other tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Warrant Agent) in connection therewith. Every substitute Warrant Certificate executed and delivered pursuant to this Section 3.02 in lieu of any lost, mutilated, stolen or destroyed Warrant Certificate shall represent an additional contractual obligation of the Company, whether or not the lost, stolen or destroyed Warrant Certificate shall be at any time enforceable by anyone, and shall be entitled to the benefits of this Agreement equally and proportionately with any and all other Warrant Certificates duly executed and delivered hereunder. The provisions of this Section 3.02 are exclusive and shall preclude (to the

-12-

#4833-9459-5334

extent lawful) all other rights and remedies with respect to the replacement of lost, mutilated, stolen or destroyed Warrant Certificates.

Section 3.03    General Information to be Provided by the Company.  The Company shall provide to each Holder that is not a Competitor the same information and reports to which holders of shares of Common Stock are entitled pursuant to Section 6.1 of the Stockholders Agreement, subject, in the case of each Holder, to such Holder's execution and delivery to the Company of an appropriate confidentiality agreement, which shall be at least as restrictive, in all material respects, as the confidentiality restrictions set forth in Section 6.4 of the Stockholder Agreement and shall otherwise be, in form and substance, reasonably satisfactory to the Company.

Section 3.04    Notice of Certain Events.  The Company shall provide at least ten (10) days prior written notice to each Holder of any record date relating to the payment by the Company of a cash dividend on the Common Stock.  In the event that the Company receives a Tag-Along Notice (as defined in the Stockholders Agreement) from any party to the Stockholders Agreement with respect to any Proposed Sale (as defined in the Stockholders Agreement) of shares that constitute more than 25% of the total outstanding shares of Common Stock, it shall provide to each Holder a copy of such Tag-Along Notice, within three (3) Business Days after such receipt.  In the event that the Company provides a Piggyback Registration Notice (as defined in the Stockholders Agreement) to stockholders pursuant to the Stockholders Agreement, it shall concurrently provide to each Holder a copy of such Piggyback Registration Notice.  Each Tag-Along Notice or Piggyback Registration Notice delivered by the Company to any Holder pursuant to this Section 3.04 shall be accompanied by notice of (i) the deadline (the "Conditional Exercise Deadline") for Holders to conditionally exercise Warrants in connection with the proposed sale to which the Tag-Along Notice relates (the "Tag-Along Sale") or, as applicable, the registered offering to which such Piggyback Registration Notice relates (the "Registered Offering") and (ii) the manner in which the Company shall determine the date (the "Conditional Exercise Trigger Date") on which all conditionally exercised Warrants shall be deemed exercised.

Section 3.05    Conditional Exercise – Registration Rights; Tag-Along.

(a)    Any Holder shall be entitled, at any time following the Company's delivery of a Piggyback Registration Notice pursuant to Section 3.04 and prior to the applicable Conditional Exercise Deadline, to conditionally exercise all or any portion of the Warrants held by such Holder, subject to the occurrence of the applicable Conditional Exercise Trigger Date. With respect to any Holder's conditional exercise Warrants pursuant to this paragraph, (i) if the Conditional Exercise Trigger Date does not occur by the earlier of (x) the sixtieth (60th) day following the date of the Piggyback Registration Notice (which the Company may, in its sole discretion, extend by providing written notice of such extension to the Holders) or (y) the date of written notice from the Company that it has abandoned the Registered Offering, then such conditional exercise shall be null and void and such Holder shall continue to hold such Warrants with all rights related thereto and (ii) if the Conditional Exercise Trigger Date occurs, such Warrants shall thereupon be deemed exercised and such Holder shall not have any rights with respect to the Warrant Shares issuable pursuant to such exercise unless and until such Holder has paid, in full, the aggregate Exercise Price for such Warrant Shares; provided, that if such Holder

-13-

has duly exercised its piggyback registration rights (as set forth below) to sell any such Warrant Shares in the Registered Offering, then at any time prior to the Conditional Exercise Trigger Date such Holder may elect (subject to such written or oral agreements, terms and conditions as the Company in its discretion may reasonably require as a condition to such election) to cause the Exercise Price to be paid out of the net proceeds from the sale of such Warrant Shares in the Registered Offering.  Any Holder conditionally exercising Warrants pursuant to this paragraph shall be entitled to exercise "piggyback" registration rights with respect to the Warrant Shares to be issued pursuant to such conditional exercise, as if such Holder were an "Other Stockholder Party" and such Warrant Shares were "Registrable Securities" under the Stockholders Agreement (and subject to all of the terms and conditions set forth in the Stockholders Agreement with respect to piggyback registration rights), notwithstanding that such Warrant Shares will not be outstanding at the time such piggyback rights are exercised.  For the avoidance of doubt, any Holder who receives Warrant Shares pursuant to the exercise of Warrants and becomes a party to the Stockholders Agreement pursuant to Section 2.03(j) hereof shall thereafter be entitled to the "piggyback" registration rights of an Other Stockholder Party under the Stockholder Agreement with respect to such Warrant Shares, subject to the terms and conditions set forth in the Stockholders Agreement.

(b)    Any Holder shall be entitled, at any time following the Company's delivery of a Tag-Along Notice pursuant to Section 3.04 and prior to the applicable Conditional Exercise Deadline, to conditionally exercise such number of the Warrants held by such Holder, subject to the occurrence of the applicable Conditional Exercise Trigger Date, as would result in the issuance of a number of Warrant Shares equal to the Tag-Along Portion (as defined below) for such Holder.  Any Holder conditionally exercising Warrants pursuant to the immediately preceding sentence shall be entitled to (and shall, as a condition to such conditional exercise) exercise "tag-along" rights under Section 5.2 of the Stockholders Agreement with respect to the Warrant Shares issuable upon exercise of all such conditionally exercised Warrants, as if such Holder were a "Tagging Stockholder" and such Warrant Shares were "Shares" under the Stockholders Agreement (and subject to all of the terms and conditions set forth in the Stockholders Agreement with respect to the rights of Tagging Stockholders), notwithstanding that such Warrant Shares will not be outstanding at the time such tag-along rights are exercised. With respect to any Holder's conditional exercise of Warrants pursuant to this paragraph, (i) if the Conditional Exercise Trigger Date does not occur by the earlier of (x) the thirtieth (30th) day following the date of the Tag-Along Notice (which the Company may, in its sole discretion, extend by providing written notice of such extension to the Holders) or (y) the date of written notice from the Company that the Tag-Along Sale has been abandoned, then such conditional exercise shall be null and void and such Holder shall continue to hold such Warrants with all rights related thereto and (ii) if the Conditional Exercise Trigger Date occurs, all Warrants conditionally exercised pursuant to the first sentence of this paragraph shall thereupon be deemed exercised and such Holder shall not have any rights with respect to the Warrant Shares issuable pursuant to such exercise unless and until such Holder has paid, in full, the aggregate Exercise Price for such Warrant Shares; provided, that at any time prior to the Conditional Exercise Trigger Date such Holder may elect (subject to such written or oral agreements, terms and conditions as the Company in its discretion may reasonably require as a condition to such election) to cause the Exercise Price to be paid out of the net proceeds from the sale of such Warrant Shares in the Tag-Along Sale.  As used in this paragraph, "Tag-Along Portion" shall mean, with respect to any Holder conditionally exercising Warrants in connection with any Tag-

-14-

Along Sale, a number of Shares (as defined in the Stockholders Agreement), rounded down to the nearest whole Share (as defined in the Stockholders Agreement), equal to (i) the total number of Shares proposed to be Transferred (as defined in the Stockholders Agreement) by the Proposed Seller (as defined in the Stockholders Agreement) in such Tag-Along Sale multiplied by (ii) a fraction the numerator of which is the total number of Shares held by such Holder (including the Warrant Shares issuable upon exercise of all Warrants held by such Holder) immediately prior to such Transfer and the denominator of which is the total number of Shares outstanding immediately prior to such Transfer (including the Warrant Shares issuable upon exercise of all Warrants collectively held by all Holders conditionally exercising Warrants in connection with such Tag-Along Sale).

## ARTICLE IV
## EXCHANGE AND TRANSFER

Section 4.01          Exchange and Transfer.

(a)     Upon surrender at the Warrant Agent Office, Warrant Certificates evidencing Warrants may be exchanged for Warrant Certificates in other authorized denominations evidencing such Warrants or the transfer thereof may be registered in whole or in part; provided, however, that such other Warrant Certificates shall evidence the same aggregate number of Warrants as the Warrant Certificates so surrendered.

(b)     The Warrant Agent shall keep, at the Warrant Agent Office, books in which, subject to such reasonable regulations as it may prescribe, it shall register Warrant Certificates and exchanges and transfers of outstanding Warrant Certificates upon surrender of such Warrant Certificates to the Warrant Agent at the Warrant Agent Office for exchange or registration of transfer, properly endorsed.

(c)     No service charge shall be made for any exchange or registration of transfer of Warrant Certificates, but the Company may require payment of a sum sufficient to cover any stamp or other tax or other governmental charge that may be imposed in connection with any such exchange or registration of transfer.

(d)     Whenever any Warrant Certificates, are so surrendered for exchange or registration of transfer, an authorized officer of the Warrant Agent shall manually countersign and deliver to the person or persons entitled thereto a Warrant Certificate or Warrant Certificates, duly authorized and executed by the Company, as so requested.  The Warrant Agent shall not effect any exchange or registration of transfer which will result in the issuance of a Warrant Certificate evidencing a fraction of a Warrant or a number of full Warrants and a fraction of a Warrant.

(e)     All Warrant Certificates, issued upon any exchange or registration of transfer of Warrant Certificates shall be the valid obligations of the Company, evidencing the same obligations, and entitled to the same benefits under this Agreement, as the Warrant Certificates surrendered for such exchange or registration or transfer.  For the avoidance of doubt, notwithstanding anything contained in this Section 4.01, no Warrant or Warrant Certificate shall

-15-

#4833-9459-5334

be Transferred pursuant to any Transfer that does not fully comply with all of the restrictions on Transfer set forth in Section 4.02.

Section 4.02    Restrictions on Transfer; Restrictive Legend

(a)    Transfer Restrictions.  Warrants shall not be Transferred (as defined below), in whole or in part, other than pursuant to (i) Transfers to the Company, to any Holder, or to any holder of shares of Common Stock, (ii) Transfers by any Holder who is an individual to any member of such Holder's immediate family or any estate or trust in which such Holder is the settlor or otherwise by will or the laws of descent or distribution or (iii) Transfers by any Holder that is not an individual to any Affiliate of such Holder; provided, that any such transfer shall be subject to full compliance with all of the conditions and restrictions on transfer set forth in this Section 4.02, and in no event shall any Warrant be Transferred to any Competitor without the prior written consent of the Company, which consent may be given or withheld in the Company's sole discretion.  As used herein, "Transfer" means, with respect to any Warrant or other security, to directly or indirectly sell, exchange, transfer, hypothecate, negotiate, gift, bequeath, convey in trust, pledge, mortgage, grant a security interest in, assign, encumber, or otherwise dispose of all or any portion of such security, including by recapitalization, merger, consolidation, liquidation, dissolution, dividend, distribution or otherwise; provided, however, that a pledge or grant of a security interest in any Warrant to secure a "bona fide" loan shall in no event be deemed a Transfer for any purpose of this Agreement so long as (i) written notice is provided to the Company identifying the pledgee or person to whom a security interest in such Warrant is granted and (ii) such pledgee's interest in such Warrant is limited to an actual or contingent economic interest, it being understood and agreed that the pledge or grant of a security interest in Warrants does not grant such pledgee the rights of a Holder under this Agreement; provided, further, that any foreclosure, transfer in lieu of foreclosure or other enforcement of such pledge or security interest shall be deemed to constitute a Transfer hereunder and shall be subject to the rights of the Company set forth in this Agreement. "Transferable", "Transferred", "Transferor" and "Transferee" shall have the correlative meanings.

(b)    Notice and Confirmation.  In order to effect the restrictions on Transfer and other limitations set forth in this Section 4.02, each Holder shall (i) provide advance written notice of any proposed Transfer of Warrants, including the terms of such Transfer and the identity of the proposed Transferee and (ii) unless waived in writing by the Company, refrain from consummating any such Transfer unless and until the Company (in its sole discretion) expressly confirms in writing that such proposed Transfer would not violate the terms of this Section 4.02, such confirmation to be provided within ten (10) business days from the date of the Company's receipt of the notification of the proposed Transfer.

(c)    Conditions Precedent and other Restrictions.  In no event shall any Warrant be Transferred, pursuant to clauses (i), (ii) or (iii) of Section 4.02(a) or otherwise, unless: (i)(x) such Transfer is pursuant to an effective registration statement under the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder (the "Securities Act") and has been registered under all applicable state securities or "blue sky" laws or (y) unless waived by the Company in writing, such Holder shall have furnished the Company with an opinion of counsel, which opinion of counsel shall be reasonably satisfactory to the Company, to

-16-

the effect that no such registration is required because of the availability of an exemption from registration under the Securities Act and all applicable state securities or "blue sky" laws, and (ii) the transferee of the Warrants, as applicable, shall have executed and delivered to the Company, as a condition precedent to any sale or Transfer thereof, an instrument in form and substance satisfactory to the Company confirming that such transferee takes such Warrants subject to all the terms and conditions of this Warrant Agreement.  Notwithstanding anything else contained in this Agreement, in no event shall any Holder have the right to Transfer any Warrant, pursuant to clauses (i), (ii) or (iii) of Section 4.02(a) or otherwise, if, as a result of such Transfer, (x) any class of the Company's equity securities (as defined in the Exchange Act) would, assuming the exercise of all outstanding warrants and options to purchase any such equity securities, be held of record by more than three hundred (300) persons or (y) otherwise result in the Company being required (as reasonably determined by the Board of Directors) to file reports under the Exchange Act, if the Company is not then otherwise subject to such requirements.  Nothing contained in this Article IV shall limit the authority of the Board of Directors to take such other action to the extent permitted by law as it deems necessary or advisable to preserve the Company's status as a non-reporting company under the Exchange Act or to ensure that any proposed Transfer complies with the Securities Act and all applicable state securities or "blue sky" laws.

(d)    Any attempted or purported Transfer of all or any portion of any Warrants that does not fully comply with the Transfer restrictions and other requirements set forth in this Section 4.02 shall be null and void ab initio and of no force or effect whatsoever, and the purported Transferee will not be treated as the holder or owner of any such Warrants for any purposes under this Agreement or otherwise, and the Company will not register such attempted or purported Transfer.

(e)    Legends.  Warrant Shares will be subject to the restrictions on Transfer set forth in the Stockholders Agreement, and each stock certificate representing Warrant Shares shall bear an endorsement reading substantially as set forth in the Stockholders Agreement for shares of Common Stock subject thereto, together with any other endorsements that the Board of Directors deems necessary or appropriate.  Each Warrant Certificate shall bear an endorsement in the following form, or such form as the Board of Directors reasonably deems necessary or appropriate to reflect the applicable Transfer restrictions set forth herein:

THE SECURITIES REPRESENTED BY THIS CERTIFICATE (THE "SECURITIES") WERE ORIGINALLY ISSUED IN RELIANCE UPON AN EXEMPTION FROM THE REGISTRATION REQUIREMENT OF SECTION 5 OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), PROVIDED BY SECTION 1145 OF THE BANKRUPTCY CODE, 11 U.S.C. 1145.  THE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE ACT OR ANY STATE SECURITIES LAW, AND TO THE EXTENT THE HOLDER OF THE SECURITIES IS AN "UNDERWRITER," AS DEFINED IN SECTION 1145(B)(1) OF THE BANKRUPTCY CODE, THE SECURITIES MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR AN EXEMPTION FROM REGISTRATION THEREUNDER.

-17-

THE SALE, ASSIGNMENT, PLEDGE, ENCUMBRANCE OR OTHER TRANSFER OF THE SECURITIES IS RESTRICTED BY THE TERMS OF A WARRANT AGREEMENT, DATED AS OF [__], 2010, BETWEEN THE COMPANY AND THE WARRANT AGENT. BY ACCEPTING ANY INTEREST IN THE SECURITIES REPRESENTED BY THIS CERTIFICATE, THE RECIPIENT OF SUCH SECURITIES IS DEEMED TO AGREE TO AND SHALL BECOME BOUND BY ALL THE PROVISIONS OF SAID WARRANT AGREEMENT, INCLUDING THE TRANSFER RESTRICTIONS CONTAINED THEREIN.  A COPY OF THE WARRANT AGREEMENT MAY BE OBTAINED UPON WRITTEN REQUEST TO THE SECRETARY OF THE COMPANY.

Section 4.03    Treatment of Holders of Warrant Certificates.  Each Holder of a Warrant Certificate, by accepting the same, consents and agrees with the Company, the Warrant Agent and every subsequent Holder of such Warrant Certificate that until the transfer of such Warrant Certificate is registered on the books of such Warrant Agent, the Company and the Warrant Agent may treat the registered Holder of such Warrant Certificate as the absolute owner thereof for any purpose and as the person entitled to exercise the rights represented by the Warrants evidenced thereby, any notice to the contrary notwithstanding.

Section 4.04    Cancellation of Warrant Certificates.  Any Warrant Certificate surrendered for exchange or registration of transfer or exercise of the Warrants evidenced thereby shall, if surrendered to the Company, be delivered to the Warrant Agent, and all Warrant Certificates surrendered or so delivered to the Warrant Agent shall be promptly cancelled by the Warrant Agent and shall not be reissued and, except as expressly permitted by this Agreement, no Warrant Certificate shall be issued hereunder in exchange therefor or in lieu thereof.  The Warrant Agent shall cause all cancelled Warrant Certificates to be destroyed and shall deliver a certificate of such destruction to the Company.

**ARTICLE V**
**ADJUSTMENT OF WARRANT PRICE AND NUMBER OF WARRANT SECURITIES**

Section 5.01    Adjustments Generally.  The Exercise Price, the number of Warrant Shares issuable upon exercise of each Warrant and the number of Warrants outstanding are subject to adjustment from time to time upon the occurrence of any of the events enumerated in this Article V, as determined to be necessary or appropriate in the reasonable discretion of the Board of Directors.

Section 5.02    Stock Dividends; Stock Splits.  If after the date hereof, and subject to the provisions of Section 5.08, the number of outstanding shares of Common Stock is increased by a stock dividend payable in shares of Common Stock, by a stock split, or other similar event, then, on the effective date of such stock dividend, stock split or similar event, the number of Warrant Shares issuable on exercise of each Warrant shall be increased in proportion to such increase in the outstanding shares of Common Stock.

Section 5.03    Aggregation of Shares.  If after the date hereof, and subject to the provisions of Section 5.08, the number of outstanding shares of Common Stock is

-18-

decreased by a consolidation, combination, reverse stock split or reclassification of shares of Common Stock or other similar event, then, on the effective date of such consolidation, combination, reverse stock split, reclassification or similar event, the number of Warrant Shares issuable on exercise of each Warrant shall be decreased in proportion to such decrease in the outstanding shares of Common Stock.

Section 5.04    Adjustments in Exercise Price.  Whenever the number of shares of Common Stock issuable upon the exercise of Warrants is adjusted pursuant to Section 5.02 or Section 5.03, the Exercise Price shall be adjusted (to the nearest cent) by multiplying the Exercise Price applicable immediately prior to such adjustment by a fraction (x) the numerator of which shall be the number of Warrant Shares issuable upon exercise of each Warrant immediately prior to such adjustment, and (y) the denominator of which shall be the number of Warrant Shares  issuable upon exercise of each Warrant immediately after such adjustment.

Section 5.05    Reclassification or Reorganization.  In the case of any reclassification or reorganization of the outstanding shares of Common Stock (other than a change covered by Section 5.02 or 5.03 or that solely affects the par value of such shares of Common Stock), each Holder shall thereafter have the right to exercise its Warrants and in lieu of the Warrant Shares that would otherwise be issuable upon such exercise, receive the kind and amount of shares of stock or other securities or property (including cash) that such Holder would have received pursuant to such reclassification or reorganization if such Holder had exercised such Warrants immediately prior to such event; and if any reclassification also results in a change in shares of Common Stock covered by Section 5.02 or 5.03, then such adjustment shall be made pursuant to Sections 5.02, 5.03, 5.04 and this Section 5.05.  The immediately preceding sentence shall similarly apply to successive reclassifications and reorganizations.

Section 5.06    Cash Dividends; Extraordinary Transactions.  If the Company shall pay a cash dividend to all of the holders of Common Stock, then the Exercise Price of the Warrants shall be reduced by the amount of the per share cash dividend.  If the Company shall distribute property (including shares of Common Stock) to all of the holders of Common Stock, other than as described in Section 5.02, 5.03 or 5.05, in connection with a spin-off, sale of a material subsidiary or similar extraordinary transaction, then the Exercise Price of the Warrants shall be reduced by an amount equal to the per share fair market value of the property so distributed, as determined in good faith by the Company's Board of Directors.

Section 5.07    Notices of Changes in Warrant.  Upon every adjustment of the Exercise Price or the number of shares issuable upon exercise of a Warrant, the Company shall give written notice thereof to the Warrant Agent, which notice shall state the Exercise Price resulting from such adjustment and the increase or decrease, if any, in the number of shares of Common Stock purchasable at such price upon the exercise of a Warrant, setting forth in reasonable detail the method of calculation and the facts upon which such calculation is based. Upon the occurrence of any event specified in Section 5.02, 5.03, 5.04, 5.05 or 5.06, then, in any such event, the Company shall give or cause to be given written notice to each Holder, by press release or at the last address set forth for such Holder in the register books of the Warrant Agent, of the record date or the effective date of the event.  Failure to give such notice, or any defect therein, shall not affect the legality or validity of such event.

-19-

#4833-9459-5334

Section 5.08      No Fractional Shares.  Notwithstanding any provision contained in this Agreement to the contrary, the Company shall not issue fractional shares upon exercise of Warrants.  If, by reason of any adjustment made pursuant to this Article V, any Holder would be entitled, upon the exercise of such Warrant, to receive a fractional interest in a share of Common Stock, the Company shall, upon such exercise, round down to the nearest whole number the number of the shares of Common Stock to be issued to the Holder.

Section 5.09      Form of Warrant.  The form of Warrant or Warrant Certificate need not be changed because of any adjustment pursuant to this Article V, and Warrants Certificates issued after such adjustment may state the same Exercise Price and the same number of shares as is stated in the Warrant Certificates initially issued pursuant to this Agreement.  However, the Company may at any time in its sole discretion make any change in the form of Warrant or Warrant Certificate that the Company may deem appropriate and that does not affect the substance thereof, and any Warrant Certificates thereafter issued or countersigned, whether in exchange or substitution for an outstanding Warrant Certificate or otherwise, may be in the form as so changed.

Section 5.10      De Minimis Adjustments.  No adjustment in the number of Warrant Shares purchasable hereunder shall be required unless such adjustment would require an increase or decrease of at least one percent (1%) in the number of Warrant Shares purchasable upon the exercise of each Warrant; provided, however, that any adjustments which by reason of this paragraph (c) are not required to be made shall be carried forward and taken into account in any subsequent adjustment.  All calculations shall be made to the nearest cent and to the nearest one-hundredth of a Warrant Share, as the case may be.

### ARTICLE VI
### CONCERNING THE WARRANT AGENT

Section 6.01      Warrant Agent.

The Company hereby appoints [_____] as Warrant Agent of the Company in respect of the Warrants and the Warrant Certificates upon the terms and subject to the conditions herein and in the Warrant Certificates; and [_____] hereby accepts such appointment.  The Warrant Agent shall have the powers and authority granted to and conferred upon it in the Warrant Certificates and herein and such further powers and authority to act on behalf of the Company as the Company may hereafter grant to or confer upon it.  All of the terms and provisions with respect to such powers and authority contained in the Warrant Certificates are subject to and governed by the terms and provisions hereof.

Section 6.02      Conditions of Warrant Agent's Obligations.

(a)      The Warrant Agent accepts its obligations herein set forth upon the terms and conditions hereof, including the following, to all of which the Company agrees and to all of which the rights hereunder of the Holders from time to time of the Warrant Certificates shall be subject:

(i)      *Compensation and Indemnification*.  The Company agrees promptly to pay the Warrant Agent the compensation to be agreed upon

-20-

#4833-9459-5334

with the Company for all services rendered by the Warrant Agent and to reimburse the Warrant Agent for reasonable out-of-pocket expenses incurred by the Warrant Agent without negligence, bad faith or willful misconduct or breach of this Agreement on its part in connection with the services rendered hereunder by the Warrant Agent.  The Company also agrees to indemnify the Warrant Agent for, and to hold it harmless against, any loss, liability or expense incurred without negligence, bad faith or willful misconduct on the part of the Warrant Agent, arising out of or in connection with its acting as Warrant Agent hereunder, as well as the reasonable costs and expenses of defending against any claim of such liability.

(ii)     *Agent for the Company*.  In acting under this Agreement and in connection with the Warrants and the Warrant Certificates, the Warrant Agent is acting solely as agent of the Company and does not assume any obligation or relationship of agency or trust for or with any of the Holders of Warrant Certificates or beneficial owners of Warrants.

(iii)     *Counsel*.  The Warrant Agent may consult with counsel satisfactory to it in its reasonable judgment (who may be counsel for the Company), and the advice of such counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in accordance with the advice of such counsel.

(iv)     *Documents*.  Subject to Section 2.03(k), the Warrant Agent shall be protected and shall incur no liability for or in respect of any action taken or thing suffered by it in reliance upon any Warrant Certificate, notice, direction, consent, certificate, affidavit, statement or other paper or document reasonably believed by it to be genuine and to have been presented or signed by the proper parties.

(v)     *Certain Transactions*.  The Warrant Agent, and its officers, directors and employees, may become the owner of, or acquire any interest in, Warrants, with the same rights that it or they would have if it were not the Warrant Agent hereunder, and, to the extent permitted by applicable law, it or they may engage or be interested in any financial or other transaction with the Company and may act on, or as depositary, trustee or agent for, any committee or body of holders of Warrant Shares or other obligations of the Company as freely as if it were not the Warrant Agent hereunder.

(vi)     *No Liability for Interest*.  The Warrant Agent shall have no liability for interest on any monies at any time received by it pursuant to any of the provisions of this Agreement or of the Warrant Certificates.

(vii)     *No Liability for Invalidity*.  The Warrant Agent shall not be under any responsibility with respect to the validity or sufficiency of this Agreement or the execution and delivery hereof (except the due authorization to execute this Agreement and the due execution and delivery hereof by the Warrant

-21-

Agent) or subject to Section 2.03(k), with respect to the validity or execution of any Warrant Certificates (except its countersignature thereof).

(viii)   *No Liability for Recitals*.  The recitals contained herein shall be taken as the statements of the Company and the Warrant Agent assumes no liability for the correctness of the same.

(ix)   *No Implied Obligations*.  The Warrant Agent shall be obligated to perform only such duties as are herein and in the Warrant Certificates specifically set forth and no implied duties or obligations shall be read into this Agreement or the Warrant Certificates against the Warrant Agent.  The Warrant Agent shall not be under any obligation to take any action hereunder which may tend to involve it in any expense or liability, the payment of which within a reasonable time is not, in its reasonable opinion, assured to it.  The Warrant Agent shall not be accountable or under any duty or responsibility for the use by the Company of any of the Warrant Certificates countersigned by the Warrant Agent and delivered by it to the Company pursuant to this Agreement or for the application by the Company of the proceeds of the Warrant Certificates. The Warrant Agent shall have no duty or responsibility in case of any default by the Company in the performance of its covenants or agreements contained herein or in the Warrant Certificates or in the case of the receipt of any written demand from a Holder of a Warrant Certificate with respect to such default, including, without limiting the generality of the foregoing, any duty or responsibility to initiate or attempt to initiate any proceedings at law or otherwise or, except as provided in Section 7.02, to make any demand upon the Company.

Section 6.03   Resignation and Appointment of Successor.

(a)   The Company agrees, for the benefit of the Holders from time to time of the Warrant Certificates, that there shall at all times be a Warrant Agent hereunder until all the Warrants have been exercised or are no longer exercisable.  The initial Warrant Agent and any successor Warrant Agent hereunder shall be the Company or a bank or trust company in good standing, authorized under the laws of the jurisdiction of its organization to exercise corporate trust powers.

(b)   The Warrant Agent may at any time resign as such by giving written notice of its resignation to the Company, specifying the desired date on which its resignation shall become effective; provided, however, that such date shall be not less than 90 days after the date on which such notice is given unless the Company agrees to accept shorter notice.  Upon receiving such notice of resignation, the Company shall promptly appoint a successor Warrant Agent (which shall be a bank or trust company in good standing, authorized under the laws of the jurisdiction of its organization to exercise corporate trust powers) by written instrument in duplicate signed on behalf of the Company, one copy of which shall be delivered to the resigning Warrant Agent and one copy to the successor Warrant Agent.  The Company may, at any time and for any reason, remove the Warrant Agent and appoint a successor Warrant Agent (qualified as aforesaid) by written instrument in duplicate signed on behalf of the Company and specifying such removal and the date when it is intended to become effective, one copy of which shall be

-22-

delivered to the Warrant Agent being removed and one copy to the successor Warrant Agent. Any resignation or removal of the Warrant Agent and any appointment of a successor Warrant Agent shall become effective upon acceptance of appointment by the successor Warrant Agent as provided in this subsection (b).  In the event a successor Warrant Agent has not been appointed and accepted its duties within 90 days of the Warrant Agent's notice of resignation, the Warrant Agent may apply to any court of competent jurisdiction for the designation of a successor Warrant Agent.  Upon its resignation or removal, the Warrant Agent shall be entitled to the payment by the Company of the compensation and to the reimbursement of all reasonable out-of-pocket expenses incurred by it hereunder as agreed to in Section 6.02(a).

(c)     The Company shall remove the Warrant Agent and appoint a successor Warrant Agent if the Warrant Agent (i) shall become incapable of acting, (ii) shall be adjudged bankrupt or insolvent, (iii) shall commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to it or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property, (iv) shall consent to, or shall have had entered against it a court order for, any such relief or to the appointment of or taking possession by any such official in any involuntary case or other proceedings commenced against it, (v) shall make a general assignment for the benefit of creditors or (vi) shall fail generally to pay its debts as they become due.  Upon the appointment as aforesaid of a successor Warrant Agent and acceptance by it of such appointment, the predecessor Warrant Agent shall, if not previously disqualified by operation of law, cease to be Warrant Agent hereunder.

(d)     Any successor Warrant Agent appointed hereunder shall execute, acknowledge and deliver to its predecessor and the Company an instrument accepting such appointment hereunder, and thereupon such successor Warrant Agent, without any further act, deed or conveyance, shall become vested with all the authority, rights, powers, immunities, duties and obligations of such predecessor with like effect as if originally named as Warrant Agent hereunder, and such predecessor shall thereupon become obligated to transfer, deliver and pay over, and such successor Warrant Agent shall be entitled to receive, all monies, securities and other property on deposit with or held by such predecessor as Warrant Agent hereunder.

(e)     Any corporation into which the Warrant Agent hereunder may be merged or converted or any corporation with which the Warrant Agent may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Warrant Agent shall be a party, or any corporation to which the Warrant Agent shall sell or otherwise transfer all or substantially all the assets and business of the Warrant Agent, provided that it shall be qualified as aforesaid, shall be the successor Warrant Agent under this Agreement without the execution or filing of any paper or any further act on the part of any of the parties hereto.

## ARTICLE VII
## MISCELLANEOUS

Section 7.01        Amendment.  The terms of the Warrants may be amended by the Company together with the affirmative vote or consent of the Holders of a majority of the Warrants.

-23-

#4833-9459-5334

Section 7.02        Notices and Demands to the Company and Warrant Agent.
If the Warrant Agent shall receive any notice or demand addressed to the Company by the
Holder of a Warrant Certificate pursuant to the provisions of the Warrant Certificates, the
Warrant Agent shall promptly forward such notice or demand to the Company.

Section 7.03        Notices -- Address for Notice. Any notice or
communication from the Company to the Warrant Agent with respect to this Agreement shall be
addressed to [          ], Attention: [          ], and any notice or communication from the Warrant
Agent to the Company with respect to this Agreement shall be addressed to The Newark Group,
Inc., 20 Jackson Drive, Cranford, NJ  07016, Attention: President (or such other address as shall
be specified in writing by the Warrant Agent or by the Company).  Any notice or communication
that is given to any Holder pursuant to this Agreement or with respect to any Warrant or Warrant
Certificate shall be addressed to such Holder's address as it appears on the books of the Warrant
Agent.

Section 7.04        Applicable Law; Waiver of Jury Trial. The validity,
interpretation and performance of this Agreement and each Warrant Certificate issued hereunder
and of the respective terms and provisions hereof and thereof shall be governed by, and
construed in accordance with, the laws of the State of Delaware, without regard to any conflicts
of law provision that would require the application of the law of any other jurisdiction.  THE
COMPANY, THE WARRANT AGENT, AND EACH HOLDER HEREBY KNOWINGLY,
VOLUNTARILY, AND INTENTIONALLY WAIVES ANY RIGHTS THEY MAY HAVE TO
A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT
OF, UNDER, OR IN CONNECTION WITH, THIS AGREEMENT OR ANY WARRANT
CERTIFICATE OR WARRANT ISSUED HEREUNDER.

Section 7.05        Headings. The descriptive headings of the several Articles
and Sections of this Agreement are inserted for convenience only and shall not control or affect
the meaning or construction of any of the provisions hereof.

Section 7.06        Counterparts. This Agreement may be executed in any
number of counterparts, any of which may be delivered via facsimile, PDF, or other forms of
electronic delivery, each of which as so executed shall be deemed to be an original, but such
counterparts shall together constitute but one and the same instrument.

Section 7.07        Inspection of Agreement. A copy of this Agreement shall
be available at all reasonable times at the principal corporate trust office of the Warrant Agent
for inspection by the Holder of any Warrant Certificate.  The Warrant Agent may require such
Holder to submit his Warrant Certificate for inspection by it.

Section 7.08        Notices – Manner of Notice. All notices and
communications made to the Company, the Warrant Agent or any Holder pursuant to this
Agreement or any Warrant Certificate shall be in writing and shall be conclusively deemed to
have been duly given (i) when hand delivered to the receiving party; (ii) three (3) Business Days
after deposit in the U.S. mail with first class or certified mail receipt requested postage prepaid;
or (iii) the next Business Day after deposit with a national overnight delivery service, postage

-24-

prepaid, with next Business Day delivery guaranteed, provided that the sending party receives a confirmation of delivery from the delivery service provider.

[SIGNATURE PAGE FOLLOWS]

-25-

#4833-9459-5334

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first written above.

THE NEWARK GROUP, INC.


By: _____
    Name:
    Title:


[_____]


By: _____
    Name:
    Title:

#4833-9459-5334

EXHIBIT A

[FORM OF WARRANT CERTIFICATE]

[Face]

EXERCISABLE ONLY IF AUTHENTICATED BY THE WARRANT
AGENT AS PROVIDED HEREIN

VOID AFTER THE CLOSE OF BUSINESS ON _____, 201_
THE NEWARK GROUP, INC.

Warrant Certificate representing
Series A Warrants to purchase
Common Stock, par value $.01 per share
as described herein

_____

This certifies that [_____] or registered assigns is the registered
owner of the above indicated number of  Series A Warrants (each, a "Warrant"), each Warrant
entitling such registered owner to purchase, one share of the Common Stock, par value $.01 per
share (the "Warrant Shares") of The Newark Group, Inc. (the "Company") on the following basis.

The Warrants may be exercised, in whole or in part, at any time prior to 5:00 p.m. New
York City time, on _____, 2016 (such date and such time, the "Expiration Date").  Each
Warrant not exercised at or before the Expiration Date shall thereupon become void, and at such
time all rights, under this Warrant Certificate and the Warrant Agreement, of the registered
Holder (as defined below) of any such Warrant shall automatically cease, with respect to any
such Warrant.

Prior to the Expiration Date, each Warrant shall entitle the Holder thereof, subject to the
provisions of the Warrant Agreement, to purchase from the Company one Warrant Share at the
Exercise Price of $[5.48][9] (the "Exercise Price").  The Holder of this Warrant Certificate may
exercise the Warrants evidenced hereby, in whole or in part, by surrendering this Warrant
Certificate, with the purchase form set forth hereon duly completed, accompanied by payment in
full, in United States dollars, in immediately available funds, or deemed payment in full in
connection with a "cashless" exercise, the aggregate Exercise Price for such Warrants, to the
Warrant Agent (as hereinafter defined), at the corporate trust office of [                ], or its
successor as warrant agent (the "Warrant Agent") at the address specified on the reverse hereof
and upon compliance with and subject to the conditions set forth herein and in the Warrant

_____

[9] See footnote 4.

#4833-9459-5334

Agreement dated as of _____, 2010 (the "Warrant Agreement").  Capitalized terms used, but not otherwise defined, herein, shall have the meaning ascribed to such terms in the Warrant Agreement.

As used in this Warrant Certificate, the term "Holder" shall mean the Holder (as defined in the Warrant Agreement) of this Warrant Certificate.

Any whole number of Warrants evidenced by this Warrant Certificate may be exercised to purchase Warrant Shares in registered form.  Upon any exercise of fewer than all of the Warrants evidenced by this Warrant Certificate, a new Warrant Certificate, evidencing such number of Warrants as is equal to the number of Warrants represented by this Warrant Certificate immediately prior to such partial exercise minus the number of Warrants exercised in such partial exercise, shall be issued and delivered to the Holder or its registered assigns.

This Warrant Certificate is issued under and in accordance with the Warrant Agreement, between the Company and the Warrant Agent and is subject to the terms and provisions contained in the Warrant Agreement, to all of which terms and provisions the Holder of this Warrant Certificate consents by acceptance hereof.  Copies of the Warrant Agreement are on file at the above-mentioned office of the Warrant Agent.

After authentication by the Warrant Agent and prior to the expiration of this Warrant Certificate, this Warrant Certificate may be exchanged at the corporate trust office of the Warrant Agent for Warrant Certificates representing the same aggregate number of Warrants.

Neither this Warrant Certificate nor the Warrant evidenced hereby, shall, and nothing contained in the Warrant Agreement shall be construed to, entitle the registered owner hereof to any of the rights of a registered holder or beneficial owner of shares of Common Stock, including, without limitation, the right to receive any dividends or distributions paid with respect to shares of Common Stock, the right to vote or to consent or to receive notice as a stockholder of the Company with respect to the election of directors of the Company or any other matter with respect to which stockholders of the Company are entitled to vote or consent or receive notice, or any other rights whatsoever as stockholders of the Company.

Reference is hereby made to the further provisions of this Warrant Certificate set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

This Warrant Certificate shall not be valid or obligatory for any purpose until authenticated by the Warrant Agent.

A-2

#4833-9459-5334

IN WITNESS WHEREOF, the Company has caused this Warrant Certificate to be duly executed.

Dated:_____

THE NEWARK GROUP, INC.

By:_____

Attest:

_____

Certificate of Authentication

This is one of the Warrant Certificates referred to in the within-mentioned Warrant Agreement.

_____
As Warrant Agent

By:_____
Authorized Signature

A-3

#4833-9459-5334

[REVERSE] [FORM OF WARRANT CERTIFICATE]
(Instructions for Exercise of Warrants)


To exercise any Warrants evidenced hereby, the Holder of this Warrant Certificate must pay (i) United States dollars by certified or official bank check payable to the Company or by wire transfer to a bank account specified in writing by the Company or the Warrant Agent to such Holder, in either case in immediately available funds in an amount equal to the aggregate Exercise Price in full for each of the Warrants exercised, which payment shall specify the name of the Holder of this Warrant Certificate and the number of Warrants exercised by such Holder, or (ii) if such exercise is a Cashless Exercise, then by authorizing the Company to withhold from issuance Warrants equal to the aggregate Exercise Price in full for each of the Warrants exercised, as calculated pursuant to the formula set forth in Section 2.03(d) of the Warrant Agreement.  In addition, the Holder of this Warrant Certificate shall complete the information required below and present in person or mail by registered mail this Warrant Certificate to the Warrant Agent at the addresses set forth below.

[FORM OF EXERCISE]
(To be executed upon exercise of Warrants.)


The undersigned hereby irrevocably elects to exercise _____ Warrants, represented by this Warrant Certificate, to purchase _____ shares of Common Stock, par value $.01 per share (the "Warrant Shares") of The Newark Group, Inc. and represents that he has tendered payment for such Warrant Shares in accordance with the terms of the Warrant Agreement, by (check one):

☐    certified or official bank check or by bank wire transfer of immediately available funds, in either case in immediately available funds, to the order of The Newark Group, Inc., c/o [    ] in the amount of $_____,

or

☐    authorizing the Company to withhold from issuance Warrants, in connection with a Cashless Exercise, as set forth in Section 2.03(d) of the Warrant Agreement, equal to the aggregate Exercise Price for the Warrants being exercised,

The undersigned requests the Warrant Shares to which the Holder is entitled be in fully registered form, in the authorized denominations, registered in such names and delivered, all as specified in accordance with the instructions set forth below.

If said amount of Warrant Shares is less than all of the Warrant Shares purchasable hereunder, the undersigned requests that a new Warrant Certificate representing the remaining balance of the Warrants evidenced hereby be issued and delivered to the undersigned unless otherwise specified in the instructions below.

A-4

Dated:_____

Name_____
(Please Print)

_____
(Insert Social Security or Other
Identifying Number of Holder)

Address _____
_____

Signature_____
(Signed exactly as name appears
on the other side of this Warrant
Certificate)

This Warrant may be exercised at the following addresses:
By hand at          _____
_____
_____
_____

By mail at          _____
_____
_____
_____

(Instructions as to form and delivery of Warrant Shares and/or Warrant Certificates):

A-5

#4833-9459-5334

[FORM OF ASSIGNMENT]

(TO BE EXECUTED TO TRANSFER THE WARRANT CERTIFICATE)

FOR VALUE RECEIVED _____ hereby sells, assigns and transfers unto

Please insert social
security or other
identifying number)

_____

_____

(Please print name and address
including zip code)

_____
__ the right represented by the within Warrant Certificate and does hereby irrevocably constitute and appoint _____, Attorney, to transfer said Warrant Certificate on the books of the Warrant Agent with full power of substitution.

Dated: _____

_____
Signature
(Signed exactly as name appears on the
other side of this Warrant Certificate)

Signature Guarantee:

_____

Participant in a recognized Signature
Guarantee Medallion Program (or other
signature guarantor program reasonably
acceptable to the Warrant Agent)

A-6

#4833-9459-5334